UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION


DARRYL P. PHELPS,            )
                                       )
     Plaintiff,             )
                                       )
     v.                   )      No.  4:13CV684 TIA
                                       )
CAROLYN W. COLVIN, Commissioner   )
of Social Security,             )
                                       )
               Defendant.    )

## MEMORANDUM AND ORDER
## OF UNITED STATES MAGISTRATE JUDGE

This cause is on appeal from an adverse ruling of the Social Security Administration. The suit involves applications for Disability Insurance Benefits under Title II of the Social Security Act and Supplemental Security Income under Title XVI of the Act. Claimant has filed a Brief in Support of his Complaint; the Commissioner has filed a Brief in Support of his Answer. The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).

## I.     Procedural History

Claimant Darryl P. Phelps filed Applications for Disability Insurance Benefits under Title II of the Act, 42 U.S.C. §§ 401 et. seq. (Tr. 187-90)[1] and for Supplemental Security Income payments pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, et. seq. (Tr. 183-86). Claimant states that his disability began on April 29, 2009,[2] as a result of depression and bipolar. (Tr. 47). On initial consideration, the Social Security Administration denied Claimant's

---

[1] "Tr." refers to the page of the administrative record filed by the Defendant with her Answer (Docket No. 16/filed July 22, 2013).

[2] On April 9, 2012, Claimant filed a Notice of Amended Onset changing the onset date from November 11, 2008 to April 29, 2009. (Tr. 261).

claims for benefits. (Tr. 50-54, 67-71). Claimant requested a hearing before an Administrative Law Judge ("ALJ"). On April 9, 2012, a hearing was held before the ALJ who issued an unfavorable decision on April 25, 2012. (Tr. 7-20, 27-44). The Appeals Council on February 6, 2013 found no basis for changing the ALJ's decision and denied Claimant's request for review of the ALJ's decision after considering the brief of representative. (Tr. 1-5, 360-61). The ALJ's determination thus stands as the final decision of the Commissioner. 42 U.S.C. § 405(g).

## II. Evidence Before the ALJ

### A. Hearing on April 9, 2012

#### 1. Claimant's Testimony

At the hearing on April 9, 2012, Claimant testified in response to questions posed by the ALJ and counsel. (Tr. 27-44). At the time of the hearing, Claimant was forty-nine years of age. (Tr. 29). Claimant testified that he does not have a current driver's license, because he has two DWIs, and his license was revoked. (Tr. 30). He completed the seventh grade. (Tr. 30). Claimant stands at six feet and weighs 175 pounds. (Tr. 39). He has lived at the Festus Rest Home for four months. (Tr. 42).

Claimant testified that he stopped working as a truck driver about five years earlier after working as a truck driver for sixteen years. (Tr. 31, 33). He stopped working as a truck driver after his license was revoked for receiving two DWIs within five year period. (Tr. 33). Claimant testified that he could not deal with the pressure of being a truck driver. (Tr. 33). He last worked at Ryan's Steakhouse as a dishwasher for a month in 2010, and he quit because he could not physically do the job duties, and he did not get along with the other employees. (Tr. 31-32). Claimant testified that his knee and being around other people would prevent him from working at

that job.  (Tr. 32).

Claimant stopped drinking four or five years earlier and has had a couple of drinks since then.  (Tr. 34).  He received treatment at facility while incarcerated, and he has attended AA meetings.  (Tr. 34).

Claimant testified that his social anxiety precludes employment because he cannot handle situations.  (Tr. 35).  The ALJ noted how he was shaking during the hearing.  He does not like to be around people or dealing with anything.  (Tr. 35).

Claimant received treatment in the form of medications for his mental problems.  (Tr. 36). He acknowledged the medications, Xanax and Cymbalta, seem to help him.  He sees the doctors once a month.  (Tr. 36).

Six months earlier, he was hospitalized at Jefferson Memorial for treatment of his suicidal thoughts.  (Tr. 37).  He testified how the medications help him quite a bit, and he does not experience any side effects from the medications.  After a motorcycle accident, he started having pain in his knee. He also has degenerative joint disease and back pain.  (Tr. 37).  He has problems sleeping at night, and as a result, he has to rest for a couple of hours during the day.  (Tr. 38).

Claimant testified that he could walk for fifteen to twenty minutes and then he would experience knee pain.  (Tr. 39).  He can stand for ten to fifteen minutes, and then he has to sit or move around.  (Tr. 39).  He can sit for thirty minutes, and then he becomes uncomfortable. Claimant has problems remembering things like his doctor's appointments.  (Tr. 40).  His girlfriend and the employees at the rest home where he lives remind him to take his medications and keep his doctor's appointments.  (Tr. 41).  He testified he has problems concentrating and handling stress or pressure.  (Tr. 41).

During the day, Claimant eats meals, goes outside to play cards, and takes naps. (Tr. 42). He leaves the facility four to five times a week to go to his girlfriend's house or to the store. (Tr. 43). He has been out of jail for one year serving time for failure to pay child support. (Tr. 43).

### 2. Forms Completed by Claimant

In the Disability Report - Adult, Claimant reported he stopped working on April 30, 2008 "[b]ecause of other reasons" and unable to get along with coworkers and the boss. (Tr. 265-). Claimant worked as a waiter/server. (Tr. 179).

In the Work History Report completed on January 4, 2010, he reported losing his truck driving job after losing his license after receiving two DWIs. (Tr. 273-84).

In the Function Report - Adult completed on January 4, 2010, Claimant reported his daily activities include leaving the halfway house "for five hours to walk to look for a job." (Tr. 285). He reported being able to clean and do laundry. (Tr. 287). When going out, he reported walking to be his means of travel. (Tr. 288). He noted he does not like to be around other people, because he gets "into arguments and fights with others." (Tr. 290).

In the Disability Report - Adult, Claimant reported he can hardly walk because of his knee. (Tr. 347-54).

In the Recent Medical Treatment, Claimant noted that he is bipolar so he is unable to be around a lot of people without becoming very anxious. (Tr. 141).

## III.    Medical Records and Other Records

On January 24, 2008, Claimant sought treatment in the emergency room for mild/moderate lower back pain. (Tr. 497-501, 526-29). He reported injuring his back at work while lifting a keg. (Tr. 497). The x-ray showed no acute fracture and degenerative disc change

at L5-S1, and he was diagnosed with acute lumbar strain. (Tr. 500, 502, 529).

Claimant sought treatment in the emergency room for lower back pain on February 16, 2008. (Tr. 493-96, 530-32). He reported injuring his back while attempting to lift large kegs of beer at work, and he received worker's compensation treatment with Dr. Moore, including electrophysiological treatment and prescription medications. (Tr. 493). He experienced initial improvement but when he ran out of medications, the pain intensified over the last three to four days. (Tr. 493). Examination showed mild spasm right paralumbar musculature, and moderate tenderness to palpation of right paralumbar musculature. (Tr. 495). Acute low back pain is the clinical impression. (Tr. 495).

On May 29, 2008, Claimant presented in the emergency room after lacerating his finger. (Tr. 490-92, 533-35).

On July 21, 2008, Claimant presented in the emergency room for treatment of a right knee abscess. (Tr. 486-88, 536-37).

On November 16, 2008, Claimant presented in the emergency room after injuring his shoulder in a fall at work. (Tr. 473-84, 538-49). He related pain to be improved after application of immobilizer. (Tr. 474). The doctor diagnosed him with contusion of right scapula, ligamentous sprain of his right shouler, acute cervical and lumbar strain. (Tr. 477). The x-ray showed an intact right shoulder. (Tr. 461). The CT of his right shoulder showed negative for fracture. (Tr. 465, 482). The x-ray of his CT cervical spine showed degenerative change at C6-7 and otherwise intact cervical spine. (Tr. 463, 481). The x-ray of his lumbar spine showed degenerative disc change at L5-S1 with accompanying mild hypertrophy but otherwise intact lumbar spine. (Tr. 466, 485).

On November 18, 2008, Claimant reported having pain in neck and shoulder after a rail broke on a porch and he fell down nine to twelve feet.  (Tr. 445, 457).  Dr. Sunil Chand observed his gait to be normal and noted Claimant to be alert oriented with good insight and judgment.  (Tr. 458).  Dr. Chand prescribed Vicodin as treatment.  (Tr. 459).  In follow-up treatment on November 11, he reported some pain improvement.  (Tr. 452).  Dr. Chand noted Claimant to be oriented with good recall of recent and remote events and his affect to be appropriate.  (Tr. 453).  Examination showed knee jerks to be present.  (Tr. 453).  He reported shoulder being better but pain no better on December 1, 2008.  (Tr. 449).  Dr. Chand prescribed Darvocet.  (Tr. 451).  On December 8, Claimant reported improvement of his neck and back pain.  (Tr. 445).  Dr. Chand prescribed Darvocet.  (Tr. 447).  On December 16, he reported much improvement from initial injury.  (Tr. 441).  On January 8, 2009, Dr. Chand treated Claimant for a contusion on his shoulder, shoulder pain, and muscle pain and found him to have a full range of motion of the cervical and lumbar spine and upper and lower extremities.  (Tr. 437-39).

Claimant was admitted to Southeast Missouri Mental Health Care on January 23, 2009 on a 96 hour court order initiated by a physician and discharged on January 29, 2009.  (Tr. 373, 505, 653-56).  Claimant reported having "a lot of shit going on."  (Tr. 657).  He has financial stressors due to owing $30,000 in back child support.  (Tr. 660).  The nurse noted how he appeared to be of average intellect and his treatment prognosis to be good.  (Tr. 660).  His chief complaint is "[m]oney problem."  The examiner found his reliability to be questionable.  He sent some text messages containing threats of suicide to a friend so he was admitted for evaluation.  Claimant reported that his text messages were misconstrued, and his main problem is his finances and outstanding child support.  He admitted consuming alcohol in order to cope with the stressors he

was facing. He denied any suicidal ideation and requested to go home. (Tr. 373, 505). He reported having worked at L&J Residential Care Facility for six months, but he was fired one month earlier. (Tr. 374, 506). The mental status examination showed him to be in good spirits, pleasant, and carrying on and had a normal mood and affect. (Tr. 374, 506). He received treatment for depression, right shoulder problems, nicotine withdrawal, and substance abuse/dependence. (Tr. 375, 507). The urine drug screen returned positive results for amphetamines, marijuana, benzodiazepines, and Oxycodone. It was noted that he was 100% medication compliant and at the time of discharge, his affect was brighter and his depression was lifting. (Tr. 375, 507). Discharge diagnosis included substance induced mood disorder and alcohol abuse. (Tr. 376, 508).

On June 1, 2009, Claimant sought treatment in the emergency room for low back pain and right elbow pain after car transmission falling on him after he removed the transmission from a car. (Tr. 382-84).

On July 23, 2009, Claimant presented in the emergency room for treatment of an abscess. (Tr. 553). He reported the abscess started as a bite while working and progressively worsened. (Tr. 553). He returned the next day for treatment of the insect bite. (Tr. 558). The musculaokeletal examination showed normal joint range of motion and negative cyanosis. (Tr. 559). On July 26, he returned to the emergency room for a wound recheck. (Tr. 561).

On referral by Community Supervision Center and his parole officer, Claimant was admitted to Southeast Missouri Mental Health Center on August 12, 2009 after reporting he cannot function and feeling like he wants to go off on someone. (Tr. 363, 663). His highest level of education in the identifying data is a high school education. He reported being frustrated,

because he cannot hold down a job. Since his discharge from SEMO-CTC, he has been charged

with theft and stealing on January 29, 2009. His diagnosis from his previous hospitalization was

substance induced mood disorder and alcohol abuse. (Tr. 363, 663). He reported having a high

school education and being unemployed and having his commercial driver's license taken away

due to his DWIs. (Tr. 364, 664). He is unemployed, has financial issues, has legal issues

including a new charge of theft, and is unhappy with his current living arrangements. (Tr. 671).

Mental Status Examination showed motor activity to be within normal limits; his intellect to be

average; and his memory and concentration to be intact. (Tr. 364, 664). He reported being

unable to hold a job, having legal issues, and feeling hopeless. (Tr. 365, 665). His psychiatric

history includes treatment at SMMHC in 2009 and the treatment was effective. (Tr. 672). His

mental status examination on discharge showed he memory to be average or better and his insight

and judgment to be average or better. Claimant indicated that he desired treatment. (Tr. 365,

665). Adjustment disorder with anxiety, history of alcohol abuse, antisocial personality disorder,

chronic pain, legal problems, housing problems are listed in his discharge diagnosis. (Tr. 366,

666).

On February 4, 2010, Claimant presented in the emergency room for treatment for a knee

injury and indicated this to be chronic and recurrent. (Tr. 563). Examination showed crepitus to

be palpable and distal to knee is within normal limits, and range of motion is normal without pain

but pain with hyperextension. (Tr. 564). The x-ray revealed no acute fracture and degenerative

changes. (Tr. 566). The nurse placed an immobilization device, a plastic knee brace, on his knee.

(Tr. 564-65).

On February 26, 2010, Claimant presented in the emergency room complaining of

depression, agitation, and some suicidal thoughts but no plan. (Tr. 684-99). He reported not being able to handle people at all, incarceration for failure to pay child support, and taking a friend's narcotic medication. (Tr. 684). He was sent to Jefferson Regional Medical Center on the recommendation of a counselor at BJC. (Tr. 688). Dr. Ardekani noted "[t]he patient has multiple problems, suffers from depression, does not have a job, cannot pay child support, history of alcohol and drug in the past, was in jail because of that, DWI, does not have a place to go, does not have a home to stay. $40,000 behind on child support, very depressed, very angry, very agitated, fighting with other people, overall basically unable to cope with life and brought him here." (Tr. 688). The mental status examination showed him to be anxious, irritable, sad, and angry with his general knowledge and intellectual function to be okay. (Tr. 689). The diagnostic impression listed major depression versus bipolar with paranoia and panic/anxiety. (Tr. 689). During the internal medicine consultation, he complained of right knee pain and back pain. (Tr. 690). He reported no home medications/active scripts. (Tr. 690).

In the discharge summary, Dr. Ardekani listed depression with psychotic features and schizoaffective disorder and his condition on discharge to be better. (Tr. 696). The February 28, 2010 radiology report of his lumbar spine showed no fracture, osteoarthritis, spur formation at L5 and S1, and narrowing of disc space between L5-S1. (Tr. 698). The radiology report of his right knee showed no fracture and osteoarthritis with narrowing of the joint space. (Tr. 699).

On April 7, 2010, Dr. Lauretta Walker, evaluated Claimant on referral by Disability Determination Services. (Tr. 413). Claimant reported much has happened to him in the last three years including his mother dying, losing his license because of two DWIs, inability to pay child support or have it modified, and incarceration due to failure to pay child support. (Tr. 413). Dr.

Walker observed his affect to be flat and his mood depressed. (Tr. 415). Examination showed him to be oriented in all areas and found his intelligence level to be borderline at best with possible borderline mental retardation. Dr. Walker assigned a GAF score of 54. Dr. Walker found he could understand and follow simple directions and make simple decisions. She found he has problems getting along with others, and he is not adaptable and cannot learn new things. (Tr. 415).

In the April 20, 2010 Report of Contact, a DDS employee noted calling Ryan's Steakhouse and speaking to Claimant's supervisor who reported Claimant to be working twenty to twenty five hours a week as a dishwasher, and he gets along fine with the other employees. (Tr. 339). His direct manager noted how he gets "along with everyone well. He has no problems going from one task to the next with interruption. He does not get upset with the waiters/waitresses when they don't clean the plates off well or stack them correctly." (Tr. 339). The manager further found him to be open to corrective actions if he is doing something wrong and does fine working with other people and team members seem to like him. (Tr. 339).

In the May 20, 2010 Psychiatric Review Technique, Dr. James Spence found Claimant to have moderate functional limitations in maintaining concentration, persistence, or pace and mild functional limitations in activities of daily living and maintaining social functioning. (Tr. 417-27). In the Mental Residual Functional Capacity Assessment, Dr. Spence found him to be moderately limited in his ability to understand and remember detailed instructions and his ability to maintain attention and concentration for extended periods. (Tr. 428). With respect to social interaction and adaptation, Dr. Spence found him to not be significantly limited. (Tr. 429). Dr. Spence opined Claimant to be capable of completing at least simple repetitive tasks on a sustained basis

and although he reported having trouble getting along with others, his current supervisors noted he has no difficulty getting along with supervisors or coworkers. (Tr. 431).

On May 31, 2010, Claimant presented in the emergency after being involved in a motor vehicle accident. (Tr. 567). Ligamentous sprain of right knee, abrasion of right knee, and abrasion of right elbow are listed in the clinical impression. (Tr. 568). The x-ray revealed mild degenerative changes and no fracture. (Tr. 570).

The Jule 14, 2010 x-ray of his lumbar spine showed degenerative disk changes at L5-S1. (Tr. 574).

On July 17, 2010, Claimant presented in the emergency room seeking treatment for jaundice and reported having been serving weekends in county jail secondary to excessive traffic tickets. (Tr. 575). An abdominal CT showed evidence of diffuse hepatic steatosis, two cysts in spleen, and mild hepatomegaly. (Tr. 577, 579). The doctor diagnosed him with hepatitis. (Tr. 577).

Claimant received treatment at Mineral Area Regional Medical Center from August 5 through August 14, 2010 for suicidal thoughts. (Tr. 601). Dr. Co Buntee noted how he was calmer with his medications, and he had no altercations with other residents or staff. His condition on discharge was stable and his GAF 68. The treatment notes show that his symptoms stabilized with treatment. (Tr. 601). Dr. Buntee listed suicide ideation, major depression, and acute exacerbation as her clinical impression. (Tr. 604).

Dr. Henry Steele completed a family practice consultation during his treatment in the psychiatric unit. (Tr. 619). He reported having lots of social issues that have contributed to his depression. (Tr. 619). Claimant indicated that "he just cannot be around people and cannot deal

with people at all." (Tr. 620). He complained of chronic right knee pain and recently reinjuring it when he was riding an ATV. (Tr. 620). He reported ongoing problems with depression and recently obtained insurance so he started to deal with his health and mental issues. (Tr. 621). Examination of his spine showed full range of motion, normal posture, and normal gait. (Tr. 621).

In the August 11, 2010, Mineral Area Regional Medical Center Progress Note, Dr. Co Buntee noted Claimant to be oriented to person, place, and date. (Tr. 600). He reported to be a lot calmer with his medications, and he has not had any altercations with other residents or staff on the unit. (Tr. 600).

On November 23, 2010, Claimant presented in the emergency room after falling from a five feet high wooden wall. (Tr. 628). Acute cervical strain, acute lumbar strain, and concussion without loss of consciousness are listed in the clinical impression. (Tr. 629). He returned on November 25 and reported having continued pain numbness and tingling down his right leg. (Tr. 631).

The November 23, 2010 x-ray of his lumbar spine after a motor vehicle accident revealed degenerative disc changes L5-S1. (Tr. 625). The CT of his cervical spine showed no evidence of fracture, subluxation, or focal disc protrusion. (Tr. 627).

On December 20, 2010, Dr. Shayne Keddy completed psych evaluation for complaints of suicidal ideation and depression ongoing for several months but worse in the last two months. (Tr. 701). After talking to his sister, he decided to seek treatment in the emergency room. He has a suicide plan using a gun. (Tr. 701). Dr. Ardekani admitted him for assessment of suicidal ideation with plan to shoot himself with a gun. (Tr. 705). He sought voluntary treatment and

evaluation. He admitted to not taking his medications and has been suicidal and sought treatment to get back on his medications. Dr. Ardekani noted "[u]pon admission, I put him on the medication he was on Xanax and Lexapro. As soon as condition is stabilized, will be discharged and return home." (Tr. 705). In the January 5, 2011 Discharge Summary. Dr. Ardekani noted Claimant had been diagnosed suffering from depression, admitted him for observation, and treated his depression. (Tr. 710). Dr. Ardekani found his mood and affect got better, and his condition was improved. Depressive disorder, not otherwise specified was his final diagnosis. (Tr. 710).

On July 14, 2011, Clarice Brackett, MSW, completed a psychiatric initial evaluation in the emergency room at Parkland Health Center. (Tr. 756-67). His chief complaint was being suicidal and being off his medications after being released from prison a couple of weeks ago and not having any insurance. (Tr. 756). Claimant reported being unable to seek follow-up psychiatric treatment or be medication complaint, because he is without insurance. (Tr. 759). He reported having long term depression, but he was doing "a lot better" until he went to prison and lost his insurance and was off all psychiatric medications for six months. (Tr. 760). He realized he needed his medications and that is why he presented in the emergency room for treatment. Due to his suicidal ideations, Ms. Brackett recommended psychiatric treatment. and Claimant willing to go voluntarily. (Tr. 759).

On July 23, 2011, Claimant sought treatment in the emergency room for chest pain and reported being off psychiatric and anxiolytics during recent incarceration and has become increasingly anxious and suicidal after his release for lack of child support two weeks earlier. (Tr. 634). He is out of Klonipin medication. He was referred to another counselor for RCF placement as he is homeless. (Tr. 634). The doctor noted how crisis center believes he merits admission and

attempting to find a facility for transfer. (Tr. 635). Dr. Gangure agreed to transfer him to St. Mary's in Jefferson City for treatment of his depression with suicidal ideation. (Tr. 636).

In the September 13, 2011 Festus Rest Home note, the counselor noted "[h]e has a history of DUI and lost his license and employment due to this."

On September 26, 2011, Claimant presented in the emergency room for treatment of a toothache. (Tr. 712-15).

The October 31, 2011 diagnostic imaging showed degenerative disc and joint disease. (Tr. 719). The diagnostic imaging of his right shoulder showed negative results. (Tr. 720). The diagnostic imaging of his right knee showed minimal degenerative changes and positional versus minimal lateral subluxation of the knee joint. (Tr. 722).

On January 23, 2012, Claimant presented in the emergency room for treatment of depression/stress and thoughts of hurting himself. (Tr. 726-31). He was admitted to the intake after reporting suicidal plan to jump off a building. (Tr. 732). After earlier treatment, he had been sent to Colonial House because he does not have a place to go. It is noted how he is doing fairly well in Colonial House and likes the place. He reported looking forward to getting better and returning to Colonial House. He requested a medication adjustment. (Tr. 732). In the January 30, 2012 Discharge Summary, Dr. Ardekani found his condition to be stabilized on medication. (Tr. 738).

In the February 2012 Resident Monthly Summary, it was noted that Claimant recently moved to Colonial House, and he was adjusting well and goes to visit friends/family regularly. (Tr. 739). On February 1, he went to his girlfriend's house to spend the night. On February 6, he went to a friend's house. The notation on March 13 reads "[n]ever see too much of Darryl,

spends a lot of time with his girlfriend Lisa.  He is really friendly and good to everyone."  (Tr. 741).

## IV.    The ALJ's Decision

The ALJ found that Claimant meets the insured status requirements of the Social Security Act through March 31, 2010.  (Tr. 12).  Claimant has not engaged in substantial gainful activity since April 29, 2009, the amended alleged onset date.  (Tr. 12).  The ALJ found that the medical evidence establishes that Claimant has the severe impairments of arthritis of the knees and back, but no impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.  (Tr. 12-13).  The ALJ found that Claimant has the residual functional capacity to perform the full range of light work.  (Tr. 13-18).  Claimant is a younger individual with a limited education and is able to communicate in English.  (Tr. 19).  Considering Claimant's age, education, work experience, and residual functional capacity, the ALJ found there are jobs that exist in significant numbers in the national economy that Claimant can perform.  The ALJ concluded that Claimant has not been under a disability from April 29, 2009, through the date of the decision.  (Tr. 19).

## V.    Discussion

In a  disability insurance benefits case, the burden is on the claimant to prove that he or she has a disability.  Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001).  Under the Social Security Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  Additionally, the

claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The Commissioner has promulgated regulations outlining a five-step process to guide an ALJ in determining whether an individual is disabled. First, the ALJ must determine whether the individual is engaged in "substantial gainful activity." If she is, then she is not eligible for disability benefits. 20 C.F.R. § 404. 1520(b). If she is not, the ALJ must consider step two which asks whether the individual has a "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimant is not found to have a severe impairment, she is not eligible for disability benefits. If the claimant is found to have a severe impairment the ALJ proceeds to step three in which he must determine whether the impairment meets or is equal to one determined by the Commissioner to be conclusively disabling. If the impairment is specifically listed or is equal to a listed impairment, the claimant will be found disabled. 20 C.F.R. § 404.1520(d). If the impairment is not listed or is not the equivalent of a listed impairment, the ALJ moves on to step four which asks whether the claimant is capable of doing past relevant work. If the claimant can still perform past work, she is not disabled. 20 C.F.R. § 404.1520(e). If the claimant cannot perform past work, the ALJ proceeds to step five in which the ALJ determines whether the claimant is capable of performing other work in the national economy. In step five, the ALJ must consider the claimant's "age, education, and past work experience." Only if a claimant is found incapable of performing other

work in the national economy will she be found disabled.  20 C.F.R. § 404.1520(f); <u>see also</u>

<u>Bowen</u>, 482 U.S. at 140-42 (explaining five-step process).

Court review of an ALJ's disability determination is narrow; the ALJ's findings will be affirmed if they are supported by "substantial evidence on the record as a whole." <u>Pearsall</u>, 274 F.3d at 1217.  Substantial evidence has been defined as "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." <u>Id.</u>  The court's review "is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts from that decision." <u>Beckley v. Apfel</u>, 152 F.3d 1056, 1059 (8th Cir. 1998).  The Court will affirm the Commissioner's decision as long as there is substantial evidence in the record to support his findings, regardless of whether substantial evidence exists to support a different conclusion.  <u>Haley v. Massanari</u>, 258 F.3d 742, 747 (8th Cir. 2001).

In reviewing the Commissioner's decision, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The claimant's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The claimant's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the claimant's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (quoting Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

The ALJ's decision whether a person is disabled under the standards set forth above is conclusive upon this Court "if it is supported by substantial evidence on the record as a whole." Wiese , 552 F.3d at 730 (quoting Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the conclusion." Wiese, 552 F.3d at 730 (quoting Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004)). When reviewing the record to determine whether the Commissioner's decision is supported by substantial evidence, however, the Court must consider evidence that supports the decision and evidence that fairly detracts from that decision. Id. The Court may not reverse that decision merely because substantial evidence would also support an opposite conclusion, Dunahoo v. Apfel, 241 F.3d 1033, 1037 (8th Cir. 2001), or it might have "come to a different conclusion." Wiese, 552 F.3d at 730. Thus, if "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, the [Court] must affirm the agency's decision." Wheeler v. Apfel, 224 F.3d 891, 894-95 (8th Cir. 2000). See also Owen v. Astrue, 551 F.3d 792, 798 (8th Cir. 2008) (the ALJ's denial of benefits is not to be reversed "so long as the ALJ's decision falls within the available zone of choice") (internal quotations omitted).

Claimant contends that the ALJ's decision is not supported by substantial evidence on the record as a whole, because the ALJ failed in formulating the RFC by failing to include limitations arising from his mental impairments such as limited social interaction and to properly weigh the expert medical opinions. Claimant further contends that the ALJ failed to properly assess his

credibility.

A.      Mental Impairments

Claimant contends that the ALJ's decision is not supported by substantial evidence on the record as a whole, because the ALJ failed in formulating the RFC by failing to include limitations arising from his mental impairments such as limited social interaction and to properly weight the expert medical opinions.

Claimant's challenge to the ALJ's RFC findings is that the ALJ erred by not including limitations arising from his mental impairments such as limited social interaction. The ALJ need only include those limitations he finds to be established by the record. "[The Court] review[s] the record to ensure that an ALJ does not disregard evidence or ignore potential limitations, but [the Court] do[es] not require an ALJ to mechanically list and reject every possible limitation. McCoy v. Astrue, 648 F.3d 605, 611, 615 (8th Cir. 2011). The omitted limitations, depend on Claimant being found credible, which the ALJ did not find and the medical evidence of records, which do not support the limitations. Although the medical record shows he received treatment for psychiatric complaints, the record shows this occurred when Claimant was noncompliant with medications or due to situational stressors. Indeed, Claimant reported having lots of social issues that have contributed to his depression

Claimant was admitted to Southeast Missouri Mental Health Care on January 23, 2009 when Claimant reported having "a lot of shit going on" and having financial stressors due to owing $30,000 in back child support. He admitted consuming alcohol in order to cope with the stressors he was facing. The mental status examination showed him to be in good spirits, pleasant, and carrying on and had a normal mood and affect. The urine drug screen returned

positive results for amphetamines, marijuana, benzodiazepines, and Oxycodone. It was noted that he was 100% medication compliant and at the time of discharge, his affect was brighter and his depression was lifting. Discharge diagnosis included substance induced mood disorder and alcohol abuse.

Eight months passed without any psychiatric treatment when on referral by Community Supervision Center and his parole officer, Claimant was admitted to Southeast Missouri Mental Health Center on August 12, 2009 after reporting he cannot function and feeling like he wants to go off on someone. His diagnosis from his previous hospitalization was substance induced mood disorder and alcohol abuse. He is unemployed, has financial issues, has legal issues including a new charge of theft, and is unhappy with his current living arrangements. Mental Status Examination showed motor activity to be within normal limits; his intellect to be average; and his memory and concentration to be intact. His psychiatric history includes treatment at SMMHC in 2009 and the treatment was effective. Claimant indicated that he desired treatment. Adjustment disorder with anxiety, history of alcohol abuse, antisocial personality disorder, chronic pain, legal problems, housing problems are listed in his discharge diagnosis.

On February 26, 2010, Claimant presented in the emergency room complaining of depression, agitation, and some suicidal thoughts but no plan. He reported not being able to handle people at all, incarceration for failure to pay child support, and taking a friend's narcotic medication. Dr. Ardekani noted "[t]he patient has multiple problems, suffers from depression, does not have a job, cannot pay child support, history of alcohol and drug in the past, was in jail because of that, DWI, does not have a place to go, does not have a home to stay. $40,000 behind on child support, very depressed, very angry, very agitated, fighting with other people, overall

basically unable to cope with life and brought him here." He reported no home medications/active scripts. In the discharge summary, Dr. Ardekani listed depression with psychotic features and schizoaffective disorder and his condition on discharge to be better. Claimant received treatment at Mineral Area Regional Medical Center from August 5 through August 14, 2010 for suicidal thoughts. Dr. Buntee noted how he was calmer with his medications, and he had no altercations with other residents or staff. His condition on discharge was stable and his GAF 68. The treatment notes show that his symptoms stabilized with treatment. In a Progress Note, Dr. Buntee noted Claimant to be oriented to person, place, and date, and he reported to be a lot calmer with his medications, and he has not had any altercations with other residents or staff on the unit.

On December 20, 2010, Dr. Shayne Keddy completed psych evaluation for complaints of suicidal ideation and depression ongoing for several months but worse in the last two months. He admitted to not taking his medications and has been suicidal and sought treatment to get back on his medications.[3] In the January 5, 2011 Discharge Summary, Dr. Ardekani found his mood and affect got better, and his condition was improved. Depressive disorder, not otherwise specified was his final diagnosis.

On July 14, 2011, Clarice Brackett, MSW, completed a psychiatric initial evaluation in the emergency room at Parkland Health Center. His chief complaint was being suicidal and being off his medications after being released from prison a couple of weeks ago and not having any insurance. Claimant reported being unable to seek follow-up psychiatric treatment or be

---

[3]The medical record shows that Claimant to be noncompliant with medications at times. Wildman v. Astrue, 596 F.3d 959, 965-66 (8th Cir. 2010) ("noncompliance can constitute evidence that is inconsistent with a treating physician's medical opinion"); 20 C.F.R. §§ 404.1530, 416.930 (unjustified failure to follow prescribed treatment is grounds for denying disability).

medication complaint, because he is without insurance.  He reported having long term depression, but he was doing "a lot better" until he went to prison and lost his insurance and was off all psychiatric medications for six months.  He realized he needed his medications and that is why he presented in the emergency room for treatment.

On January 23, 2012, Claimant presented in the emergency room for treatment of depression/stress and thoughts of hurting himself.  After earlier treatment, he had been sent to Colonial House where he is doing fairly well and likes the place.  He reported looking forward to getting better and returning to Colonial House.  He requested a medication adjustment.  In the January 30, 2012 Discharge Summary, Dr. Ardekani found his condition to be stabilized on medication.

As noted by the ALJ, Claimant's mental impairments were controlled by medications. Conditions which can be controlled by treatment are not disabling.  See Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009); Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009). Moreover, Claimant's increased symptoms coincided with times of high stress.  Indeed, the treatment notes show that Claimant's condition improved with treatment with situational stressors including unemployment, financial issues, legal issues including a new charge of theft, and unhappy with his current living arrangements.   The undersigned finds based on the medical record his depression to be somewhat situational.  Claimant reported having lots of social issues that have contributed to his depression  Situational depression, however, is not disabling.  See Gates v. Astrue, 627 F.3d 1080, 1082 (8th Cir. 2010) (ALJ properly found depression not disabling where it "was situational in nature, related to marital issues, and improved with a regimen of medication and counseling); Dunahoo v. Apfel, 241 F.3d 1033, 1039-40 (8th Cir.

2001) (holding that depression was situational and not disabling because it was due to denial of food stamps and workers compensation and because there was no evidence that it resulted in significant functional limitations).

The other evidence in the record refutes his reports of troubling dealing with others. In Report of Contact, a DDS employee noted calling Ryan's Steakhouse and speaking to Claimant's supervisor who reported Claimant gets along fine with the other employees. His direct manager noted how he gets "along with everyone well. He has no problems going from one task to the next with interruption. He does not get upset with the waiters/waitresses when they don't clean the plates off well or stack them correctly." The manager further found him to be fine working with other people and team members seem to like him. Likewise, in the Resident Monthly Summary, it was noted that Claimant recently moved to Colonial House, and he was adjusting well and goes to visit friends/family regularly. The notation on March 13 reads "[n]ever see too much of Darryl, spends a lot of time with his girlfriend Lisa. He is really friendly and good to everyone."

Claimant also contends that the opinions of state agency psychologist, Dr. Lauretta Walker support limitations beyond those incorporated into the RFC by the ALJ. Dr. Walker found Claimant's intelligence level to be borderline at best with possible borderline mental retardation and additional limitations including he can understand and follow simple directions and make simple decisions. She further found he has problems getting along with others, and he is not adaptable and cannot learn new things. The ALJ accorded little weight to Dr. Walker's opinions noting that she completed a consultative psychological evaluation, and her "opinion is inconsistent with other evidence and unsupported by the medical record.... in August 2009, he was assessed

with average intellect. No other evidence from treatment sessions suggests that the claimant has any significant cognitive limitations." (Tr. 18). Likewise, the undersigned notes how during treatment on February 26, 2010, the mental status examination showed Claimant's general knowledge and intellectual function to be okay.

Dr. Walker's opinions do not constitute substantial evidence inasmuch as her one-time evaluation inconsistent with other evidence in the record. Hancock v. Sec'y of Dept. of Health, Educ. and Welfare, 603 F.2d 739, 740 (8th Cir. 1979) (stating that the medical opinion of a consulting physician who examined the plaintiff once did not constitute substantial evidence)(citations omitted). Although the regulations recognize that state agency medical consultants are "highly qualified ... experts in Social Security disability evaluation" whose findings may be considered as opinion evidence, 20 C.F.R. § 404.1527(e)(2)(I), it is the ALJ's duty to assess all medical opinions and determine the weight to be given to these opinions. See Finch v. Astrue, 547 F.3d 933, 936 (8th Cir. 2008)("The ALJ is charged with the responsibility of resolving conflicts among medical opinions."); Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) ("It is the ALJ's function to resolve conflicts among 'the various treating and examining physicians.'")

Although Claimant argues in his Brief he could not afford more frequent medical treatment and medications due to lack of finances and insurance, the record is devoid of any evidence suggesting that Claimant sought any treatment offered to indigents. See Nelson v. Sullivan, 966 F.2d 363, 367 (8th Cir. 1992)(holding the mere use of nonprescription pain medication is inconsistent with complaints of disabling pain); Murphy v. Sullivan, 953 F.2d 383, 386-87 (8th Cir. 1992)(finding it is inconsistent with the degree of pain and disability asserted

where no evidence exists that claimant attempted to find any low cost medical treatment for alleged pain and disability).  The record does not document that Claimant was ever refused treatment due to insufficient funds.  See Osborne v. Barnhart, 316 F.3d 809, 812 (8th Cir. 2003) (recognizing that a lack of funds may justify a failure to receive medical care; however, a plaintiff's case is buttressed by evidence he related of an inability to afford prescriptions and denial of the medication); Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999) (If a claimant is unable to follow a prescribed regimen of medication and therapy to combat his difficulties because of financial hardship, that hardship may be taken into consideration when determining whether to award benefits).  At the hearing, Claimant did not testify he had any problems affording medication, but he indicated that he is taking medications for depression and anxiety, and he found the medications to be helpful.   The fact that a claimant is under financial strain, however, is not determinative.  Id.  Here, the record is devoid of any credible evidence showing that Claimant was denied treatment due to lack of finances and thus the undersigned infers that Claimant did not seek more frequent medical treatment more often, because he did not have a medical need for such treatment.  Likewise, the record is devoid of any evidence showing that Claimant had been denied medical treatment or access to prescription pain medications on account of financial constraints.  See Clark v. Shalala, 28 F.3d 828, 831 n.4 (8th Cir. 1994).

The substantial evidence on the record as a whole supports the ALJ's decision.  Where substantial evidence supports the Commissioner's decision, the decision may not be reversed merely because substantial evidence may support a different outcome.  Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993) (quoting Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992)).

B.    Credibility Determination

Claimant next argues that the ALJ's decision is not supported by substantial evidence on the record as a whole, because the ALJ failed to properly assess his credibility. The ALJ found Claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that his statements concerning intensity, persistence, and limiting effects of such symptoms are not credible, and his allegations of symptoms precluding all substantial gainful activity are not fully credible.

The determination of Claimant's credibility is for the Commissioner, and not the Court, to decide. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). The ALJ may not discredit Claimant's complaints of pain solely because they are unsupported by objective medical evidence. O'Donnell v. Barnhart, 318 F.3d 811, 816 (8th Cir. 2003); Jones v. Chater, 86 F.3d 823, 826 (8th Cir. 1996); Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted). Instead, the ALJ must fully consider all of the evidence relating to the subjective complaints, including the Claimant's work record, the absence of objective medical evidence to support the complaints, and third party observations including treating and examining doctors as to:

1. claimant's daily activities;

2. duration, frequency and intensity of the pain;

3. precipitating and aggravating factors;

4. dosage, effectiveness and side effects of medication;

5. functional restrictions.

Ford v. Astrue, 518 F.3d 979, 982 (8th Cir. 2008) (citing Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984)). The ALJ may disbelieve the claimant's subjective complaints "if there are inconsistencies in the evidence as a whole." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th

Cir. 2004).

When determining a claimant's complaints of pain, the ALJ may disbelieve such complaints if there are inconsistencies in the evidence as a whole. Polaski, 739 F.2d at 1322. The ALJ must make express credibility determinations detailing the inconsistencies in the record that support the discrediting of the claimant's subjective complaints. Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000); see also Johnson v. Secretary of Health and Human Servs., 872 F.2d 810, 813 (8th Cir. 1989). "An ALJ must do more than rely on the mere invocation of Polaski to insure safe passage for his or her decision through the course of appellate review." Harris v. Shalala, 45 F.3d 1190, 1193 (8th Cir. 1995). Where an ALJ explicitly considers the Polaski factors but then discredits a claimant's complaints for good reason, his decision should be upheld. Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992). However, the Eighth Circuit has held that an ALJ is not required to discuss each Polaski factor methodically. Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1966). The ALJ's analysis will be accepted as long as the opinion reflects acknowledgment and consideration of the factors before discounting the claimant's subjective complaints. Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000); see also Brown, 87 F.3d at 966. The ALJ's credibility findings are entitled to deference if the findings are supported by multiple valid reasons. See Goff v. Barnhart, 421 F.3d 785, 791-92 (8th Cir. 2005); Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003) (if ALJ explicitly discredits claimant and gives good reasons for doing so, court will normally defer to credibility determination). The ALJ considered the inconsistencies in the records as a whole, including Claimant's improvement with treatment, the medical evidence, stopping work for reasons not related to disability, and his daily activities. The lack of objective medical basis to support Claimant's subjective descriptions is an

important factor the ALJ should consider when evaluating those complaints. See Stephens v. Shalala, 50 F.3d 538, 541 (8th Cir. 1995) (lack of objective findings to support pain is strong evidence of lack of a severe impairment); Barrett v. Shalala, 38 F.3d 1019, 1022 (8th Cir. 1994) (the ALJ was entitled to find that the absence of an objective medical basis to support claimant's subjective complaints was an important factor in evaluating the credibility of her testimony and of her complaints). The ALJ noted that although Claimant asserts that he is unable to work due to depression and bipolar, the clinical and objective medical findings are inconsistent with an individual experiencing totally debilitating symptomatology. The ALJ then addressed other inconsistencies in the record to support his conclusion that Claimant's complaints were not credible. The undersigned finds that the ALJ's credibility determination is supported by substantial evidence in the record as a whole.

Specifically, the ALJ found that the medical evidence showed Claimant's impairments improved with treatment. The ALJ noted that the medical records showed that the medications have been relatively effective in controlling many of his symptoms. Claimant reported his psychiatric medications benefitted him and improved his depression. Conditions which can be controlled by treatment are not disabling. See Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009); Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (holding that if impairment can be controlled by treatment, it cannot be considered disabling); Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009). Additionally, the absence of side effects from medication is a proper factor for the ALJ to consider when determining whether a claimant's complaints of disabling pain are credible. See Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir. 2003) ("We [] think that it was reasonable for the ALJ to consider the fact that no medical records during this time period

mention [the claimant's] having side effects from any medication."). During various evaluations, the doctors observed Claimant to be alert, oriented, and cooperative and to have average cognitive functioning and intact memory. During the consultative examination in July 2009, Dr. Walker assigned a GAF score of 54. Likewise, Dr. Co Buntee noted how he was calmer with his medications, and he had no altercations with other residents or staff and assessed his GAF to be 68. See Halverson v. Astrue, 600 F.3d 922, 930 (8th Cir. 2010); Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir. 2005) (GAF scores between 51 and 60 contradict assertion of severe mental impairments; evidence in record that "antidepressant medication helped her symptoms, and her medical records indicate that she was stable on medication."). According to the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), a GAF of 51 to 60 indicates moderate symptoms. The Eighth Circuit has held that a GAF score between 51 and 60 does not even signify a severe impairment under the regulations. See Goff, 421 F.3d at 789, 791, 793 (finding GAF scores of 58 and 60 support ALJ's limitation for simple, routine, repetitive work).

The ALJ next discussed Claimant's daily activities, and how the activities evidence that he is capable of functioning at level that would not preclude sustained work activity. The ALJ noted Claimant reported spending five hours a day "to walk to look for a job." He also reported being able to clean and do the laundry. During treatment, he noted being injured after an ATV accident. See Buckner v. Astrue, 646 F.3d 549, 558 (8th Cir. 2011); Halverson, 600 F.3d at 932. "'Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility'." Medhaug v. Astrue, 578 F.3d 805, 817 (8th Cir. 2009) (quoting Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001)). As such, the Court finds that the ALJ's decision in this regard is based on substantial evidence on the record as a whole.

The ALJ also discussed Claimant noncompliance with medications. See Guilliams v. Barnhart, 393 F.3d 798, 802 (8th Cir. 2005) (failure to follow a recommended course of treatment weighs against a claimant's credibility). If the ALJ finds that the claimant has not been compliant with prescribed medical treatment, the ALJ is justified in disregarding the claimant's subjective testimony regarding her disability. See Holley v. Massanari, 253 F.3d 1088, 1092 (8th Cir. 2001) (ALJ may consider noncompliance with medical treatment in decision to dispense with claimant's subjective complaints).

As noted by the ALJ, the record shows Claimant did not stop working as a truck driver because of his alleged disabling impairments, but because his license was revoked after two DWIs. See Kelley v. Barnhart, 372 F.3d 958, 961 (8th Cir. 2004) (claimant's leaving work for reasons unrelated to medical condition detracted from credibility); Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir. 2003) (claimant left his job because the job ended; therefore, not unreasonable for the ALJ to find that his suggested impairments were not as severe as he alleged); Weber v. Barnhart, 348 F.3d 723, 725 (8th Cir. 2003) (noting that claimant left her job due to lack of transportation, not due to disability); Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001) (noting that ALJ's finding that the plaintiff was not fully credible was supported by the fact that the plaintiff did not lose his job because of his disability, but because his position was eliminated); Browning v. Sullivan, 958 F.2d 817, 823 (8th Cir. 1992) (finding that a cessation of work for reasons unrelated to medical condition militated against a finding of disability). In the Work History Report completed on January 4, 2010, he reported losing his truck driving job after losing his license after receiving two DWIs. (Tr. 273-84). In the September 13, 2011 Festus Rest Home note, the counselor noted "[h]e has a history of DUI and lost his license and employment

due to this." (Tr. 751). His sixteen-year job as an over-the-road truck driver ended due to his driving while intoxicated citations. The Eighth Circuit has found it significant when a claimant leaves work for reasons other than disability. Goff, 421 F.3d at 793 (claimant stopped working after being fired, not because of her disability); Kelley v. Barnhart, 372 F.3d 958, 961 (8th Cir. 2004) (claimant's leaving work for reasons unrelated to medical condition detracted from credibility); Depover, 349 F.3d at 566 (claimant left his job because the job ended; therefore, not unreasonable for the ALJ to find that this suggested that his impairments were not as severe as he alleged); Weber, 348 F.3d at 725 (noting that claimant left her job due to lack of transportation, not due to disability). See also Lindsay, 2009 WL 2382337, at *3 (W.D. Mo. July 30, 2009) ("Plaintiff reported looking for work and contacting temporary agencies. These statements are inconsistent with disability and indicate that Plaintiff did not view his pain as disabling.").

Absent a showing of deterioration, working after the onset of an impairment is some evidence of an ability to work. See Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir. 2005); Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir. 2003) (claimant left his job because the job ended; therefore, not unreasonable for the ALJ to find that his suggested impairments were not as severe as he alleged); Weber v. Barnhart, 348 F.3d 723, 725 (8th Cir. 2003) (noting that claimant left her job due to lack of transportation, not due to disability). In the Disability Report - Adult, Claimant reported he stopped working on April 30, 2008. (Tr. 267). The ALJ noted that Claimant at the hearing testified "he last worked about a year ago as a dishwasher at a restaurant." (Tr. 14). Likewise, the undersigned notes that the record shows income from LLC Carpenters for Christ in 2009 and Ryan's Restaurant Group in 2010. (Tr. 211, 296-303, 313-22). The undersigned notes how Claimant made inconsistent statements in various reports and at the hearing. In the Function

Report - Adult completed on January 4, 2010, Claimant reported his daily activities include leaving the halfway house "for five hours to walk to look for a job." See Lindsay v. Astrue, 2009 WL 2382337, at *3 (W.D. Mo. July 30, 2009) ("Plaintiff reported looking for work and contacting temporary agencies. These statements are inconsistent with disability and indicate that Plaintiff did not view his pain as disabling."); See Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir. 2006) (listing factors supporting ALJ's credibility finding). "'[A]cts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility.'" Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010) (quoting Heino v. Astrue, 578 F.3d 873, 881 (8th Cir. 2009)). Likewise he noted in the Function Report - Adult that he does not like to be around other people, because he gets "into arguments and fights with others." At the hearing, Claimant testified he could not get along with the employees at Ryan's Steakhouse, but in a DDS Report of Contact, a supervisor reported Claimant gets along fine with the other employees, and his direct manager noted he gets "along well with everyone." In the Resident Monthly Summary, it was noted that Claimant "is really friendly and good to everyone." When going out, he reported walking to be his means of travel. While in the Disability Report - Adult, Claimant reported he can hardly walk because of his knee. "One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record," including statements made by the claimant at each prior step of the administrative review process. SSR-96-7p, 1996 WL 374186, at *5 (July 2, 1996). See McCoy v. Astrue, 648 F.3d 605, 614 (8th Cir. 2011) (inconsistencies in the record detract from a claimant's credibility). Thus, the ALJ properly found that this inconsistency detracted from Claimant's credibility and from the overall credibility of his allegations.

The undersigned further notes that no treating physician stated that Claimant was disabled or unable to work during the relevant time period. See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) (significant that no examining physician submitted medical conclusion that claimant is disabled or unable to work); Edwards v. Secretary of Health & Human Servs., 809 F.2d 506, 508 (8th Cir. 1987) (examining physician's failure to find disability a factor in discrediting subjective complaints). The lack of objective medical basis to support Claimant's subjective descriptions is an important factor the ALJ should consider when evaluating those complaints. See Stephens v. Shalala, 50 F.3d 538, 541 (8th Cir. 1995)(lack of objective findings to support pain is strong evidence of lack of a severe impairment); Barrett v. Shalala, 38 F.3d 1019, 1022 (8th Cir. 1994)(the ALJ was entitled to find that the absence of an objective medical basis to support claimant's subjective complaints was an important factor in evaluating the credibility of her testimony and of her complaints). In addition, the ALJ noted that no physician had ever made any medically necessary restrictions, restrictions on his daily activities, or functional or physical limitations. Likewise, the medical evidence is devoid of any evidence showing that Claimant's condition has deteriorated or required aggressive medical treatment although Claimant testified otherwise at the hearing. See Id.; Ply v. Massanari, 251 F.3d 777, 779 (8th Cir. 2001) (noting a claimant's inconsistent statements as a factor to consider in determining claimant's credibility). The undersigned further notes that the medical records show Claimant to be noncompliant with medications at times, and he missed scheduled doctor's appointments. Wildman v. Astrue, 596 F.3d 959, 965-66 (8th Cir. 2010) ("noncompliance can constitute evidence that is inconsistent with a treating physician's medical opinion"); 20 C.F.R. §§ 404.1530, 416.930 (unjustified failure to follow prescribed treatment is grounds for denying disability).

As demonstrated above, a review of the ALJ's decision shows the ALJ not to have denied relief solely on the lack of objective medical evidence to support his finding that Claimant is not disabled. Instead, the ALJ considered all the evidence relating to Claimant's subjective complaints, including the various factors as required by Polaski, and determined Claimant's allegations not to be credible. Although the ALJ did not explicitly discuss each Polaski factor in making his credibility determination, a reading of the decision in its entirety shows the ALJ to have acknowledged and considered the factors before discounting Claimant's subjective complaints. See Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996). Inasmuch as the ALJ expressly considered Claimant's credibility and noted numerous inconsistencies in the record as a whole, and the ALJ's determination is supported by substantial evidence, such determination should not be disturbed by this Court. Id.; Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996). Because the ALJ gave multiple valid reasons for finding Claimant's subjective complaints not entirely credible, the undersigned defers to the ALJ's credibility findings. See Leckenby v. Astrue, 487 F.3d 626, 632 (8th Cir. 2007) (deference given to ALJ's credibility determination when it is supported by good reasons and substantial evidence); Guilliams v. Barnhart, 393 F.3d 798, 801(8th Cir. 2005).

The undersigned finds that the ALJ considered Claimant's subjective complaints on the basis of the entire record before him and set out the inconsistencies detracting from Claimant's credibility. The ALJ may disbelieve subjective complaints where there are inconsistencies on the record as a whole. Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990). The ALJ pointed out inconsistencies in the record that tended to militate against the Claimant's credibility. See Guilliams, 393 F.3d at 801 (deference to ALJ's credibility determination is warranted if it is

supported by good reasons and substantial evidence). Those included Claimant's improvement with treatment, the medical evidence, stopping work for reasons not related to disability, and his daily activities. The ALJ's credibility determination is supported by substantial evidence on the record as a whole, and thus the Court is bound by the ALJ's determination. <u>See</u> <u>Cox v. Barnhart</u>, 471 F.3d 902, 907 (8th Cir. 2006); <u>Robinson v. Sullivan</u>, 956 F.2d 836, 841 (8th Cir. 1992). Accordingly, the ALJ did not err in discrediting Claimant's subjective complaints. <u>See</u> <u>Hogan v. Apfel</u>, 239 F.3d 958, 962 (8th Cir. 2001) (affirming the ALJ's decision that claimant's complaints of pain were not fully credible based on findings, inter alia, that claimant's treatment was not consistent with amount of pain described at hearing, that level of pain described by claimant varied among her medical records with different physicians, and that time between doctor's visits was not indicative of severe pain).

The undersigned finds that the ALJ's determination is supported by substantial evidence on the record as a whole. "It is not the role of [the reviewing] court to reweigh the evidence presented to the ALJ or to try the issue in this case de novo." <u>Wiese v. Astrue</u>, 552 F.3d 728, 730 (8th Cir. 2009) (citation omitted). "If after review, [the court] find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the denial of benefits." <u>Id.</u> (quoting <u>Mapes v. Chater</u>, 82 F.3d 259, 262 (8th Cir. 1996)). Accordingly, the decision of the ALJ denying Claimant's claims for benefits should be affirmed.

For the foregoing reasons, the ALJ's decision is supported by substantial evidence on the record as a whole. Inasmuch as there is substantial evidence to support the ALJ's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that

would have supported a contrary outcome or because another court could have decided the case differently.  Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001).  Accordingly, the decision of the ALJ denying Claimant's claims for benefits should be affirmed.

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that  the final decision of the Commissioner denying social security benefits be **AFFIRMED**.

Judgment shall be entered accordingly.

_____
/s/ Terry I. Adelman
UNITED STATES MAGISTRATE JUDGE

Dated this  30th day of September, 2014.